UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JULIO JOLON-PUAC,

          Plaintiff,

   v.

WASHINGTON STATE, *et al*.,

          Defendants.

Case No. C23-5914-TL-SKV

ORDER DECLINING TO SERVE COMPLAINT AND GRANTING LEAVE TO AMEND

## I.    INTRODUCTION

This is a *pro se* civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Julio Jolon-Puac is a state prisoner who is currently confined at the Monroe Correctional Complex – Twin Rivers Unit ("MCC-TRU"). He has submitted to the Court for filing a civil rights complaint in which he alleges that the named Defendants failed to adequately protect him from harm inflicted by other inmates. *See* Dkt. 3-1. The Court has now screened Plaintiff's complaint and has identified deficiencies that Plaintiff must correct before this action may proceed. The Court therefore declines to order that Plaintiff's complaint be served but grants him leave to file an amended complaint correcting the deficiencies identified below.

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 1

## II. BACKGROUND

Plaintiff asserts in his complaint that he was transferred from a county jail to the Washington Corrections Center ("WCC") in October 2022, and that after arriving at WCC he was approached by active gang members who threatened him and advised him that he should request to be housed in a "gang drop-out unit" or he would be assaulted. Dkt. 3-1 at 5. When Plaintiff was classified by a prison counselor approximately thirty days later, he explained that his safety was being threatened and he requested that he be housed in a gang drop-out unit, a unit used by the Washington Department of Corrections ("DOC") to provide safe housing for incarcerated individuals who are no longer active gang members. *Id*. at 6. According to Plaintiff, he was assured by the counselor that he would be housed in a drop-out unit or facility. *Id*.

Approximately ninety days later, Plaintiff was transferred to the Coyote Ridge Corrections Center ("CRCC") which Plaintiff asserts is not a drop-out facility and houses active gang members. Dkt. 3-1 at 6. Plaintiff claims that after arriving at CRCC, he was asked by a corrections sergeant why he looked scared, and he explained that he had been previously threatened by active gang members and was assured he would be housed in a drop-out facility. *Id*. Plaintiff was thereafter housed in an active gang unit. *Id*. A short time later, Plaintiff claims he was in the CRCC visiting center when a gang leader saw his tattoos. *Id*. at 7. Plaintiff asserts that he was approached by the gang leader and about fifteen other active gang members the following day and was advised to either stab another inmate or he would be stabbed. *Id*. According to Plaintiff he was given a deadline for completing this crime. *Id*.

Plaintiff asserts that he immediately went to a prison counselor, explained what the gang members had said to him, and indicated he wanted to be placed in protective custody. Dkt. 3-1

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 2

at 7.  Plaintiff claims that after a couple of days in protective custody, CRCC Sergeant Ortiz came to his cell and Plaintiff explained that he was being threatened, that he had been asking for help from DOC staff for several months without any resolution, and that he feared for his life. *Id*.  Plaintiff asserts that Sergeant Ortiz told him he "was lying to manipulate the system for job choice at other facilities," and he was thereafter placed back in the same active gang unit. *Id*. at 7-8.  Approximately a week later, Plaintiff claims he was approached by his cellmate and several active gang members and threatened again. *Id*. at 8.  Plaintiff went immediately to the sergeant in his housing unit and explained the repeated threats and requests for help from staff, and he was again placed in protective custody. *Id*.  Sergeant Ortiz spoke with Plaintiff a couple of days later and Plaintiff again explained the threats he had been receiving. *Id*.  According to Plaintiff, Sergeant Ortiz advised him he was going to be transferred to the Stafford Creek Corrections Center ("SCCC"), and Plaintiff asked that he not be sent there because SCCC is an active gang facility. *Id*.

Approximately sixty days after Sergeant Ortiz advised Plaintiff of his impending transfer, Plaintiff was transferred to SCCC.  Dkt. 3-1 at 9.  Plaintiff asserts that two days after arriving at SCCC, he was assaulted by several active gang members resulting in serious injury. *Id*.  During a subsequent investigation by internal investigation officers at SCCC, Plaintiff explained the previous threats and requests for assistance, and claimed he had "begged" Sergeant Ortiz not to place him in an active gang facility several times. *Id*.  Plaintiff asserts that at the investigators' request, he filed "a report and charges," and was subsequently transferred to MCC-TRU, which is a drop-out facility for non-active gang members. *Id.*

Plaintiff alleges that Defendants acted with deliberate indifference to his safety when they failed to protect him from harm at the hands of other inmates.  Plaintiff contends that

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 3

Defendants' actions and/or inaction violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to equal protection. Plaintiff identifies as Defendants in his complaint the State of Washington, the Washington Department of Corrections, CRCC Sergeant Ortiz, and John Does 1 and 2, both of whom are members of the corrections staff at CRCC. *See* Dkt. 3-1 at 2-4. Plaintiff seeks declaratory relief and damages. *Id*. at 11-12.

### III.     DISCUSSION

#### A.     Screening Standards

Under the Prison Litigation Reform Act of 1996, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2); *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Rule 8(a) of the Federal Rules of Civil Procedure provides that in order for a pleading to state a claim for relief it must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. The statement of the claim must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The factual allegations of a complaint must be "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007).  In addition, a complaint must allege facts to state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of.  *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

**B.    Deficiencies**

*1.    State of Washington and Washington DOC*

Plaintiff identifies the State of Washington and the Washington DOC as Defendants in his complaint.  *See* Dkt. 3-1 at 2-3.  The United States Supreme Court has made clear that states and state agencies are not "persons" subject to suit under § 1983.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  In addition, it is well established that, under the Eleventh Amendment, an unconsenting state is immune from suits brought in federal courts by its own citizens.  *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).  The State of Washington has not waived its Eleventh Amendment immunity for suits such as the one presented here.  *See Whiteside v. State of Wash.*, 534 F.Supp.

774, 778 (E.D. Wash. 1982). Because the DOC is an agency of the State of Washington, any intended claims against the DOC or the State itself are barred under the Eleventh Amendment. *See Regents of the University of California v. Doe*, 519 U.S. 425, 429-31 (1997).

### 2. Individual Defendants

Plaintiff identifies three individual Defendants in his complaint, all of whom are employees of CRCC. The facts alleged by Plaintiff make clear that he was assaulted at SCCC and not at CRCC. There are no facts demonstrating that the three CRCC employees caused the harm Plaintiff suffered once he was transferred to SCCC. As noted above, the inquiry into causation must focus on the duties and responsibilities of the individual defendants whose acts or omissions are alleged to have caused harm of constitutional dimension. *See Leer*, 844 F.2d at 633. The fact that Plaintiff advised the three CRCC employees of the threats he received while at CRCC, and of those he received prior to his arrival there, does not render them responsible for the harm he suffered at an entirely different facility. Similarly, the fact that Sergeant Ortiz communicated to Plaintiff that he was going to be transferred from CRCC to SCCC, and that Plaintiff apparently asked Sergeant Ortiz that he not to be sent there, is not sufficient to connect Sergeant Ortiz to the alleged harm Plaintiff suffered at SCCC. Plaintiff does not allege that any of the three individual Defendants was responsible for, or had authority over, the classification decisions which resulted in his placement in active gang facilities rather than in a drop-out facility.

As Plaintiff has not set forth facts demonstrating that the three individuals named in his complaint personally participated in causing the constitutional harm he alleges he suffered, Plaintiff has not adequately stated a claim for relief against these individuals.

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 6

### 3. *Exhaustion*

The Court is unable to discern from Plaintiff's complaint whether he has sought or otherwise exhausted any administrative remedies available through the DOC. The PLRA provides that: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such actions involve general conditions or episodes, whether they allege excessive force or some other wrong, and even if they seek relief not available in grievance proceedings, such as money damages. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Incarcerated individuals must not only fully exhaust available administrative remedies, they also must exhaust those remedies in a timely manner and must abide by the administrative rules governing the internal grievance process. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). To effectively exhaust his administrative remedies, an inmate must use all the formal steps of the prison grievance process. *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). Because the purpose of exhaustion is to give prison administrators a chance to resolve the issues, the inmate must exhaust each of his claims through grievances containing enough factual specificity to notify officials of the alleged harm. *Id.* at 1120. Exhaustion of administrative remedies should be decided, if feasible, before reaching the merits of a prisoner's claim. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). Thus, Plaintiff is advised that his claims will be subject to dismissal, without consideration of the merits of his claims, if he failed to exhaust his administrative remedies with regard to such claims.

## IV. CONCLUSION

For the reasons set forth above, the Court declines to direct that Plaintiff's complaint be served. However, Plaintiff is granted leave to file an amended complaint curing the deficiencies noted above within ***thirty (30) days*** of the date on which this Order is signed. If no amended complaint is timely filed, or if Plaintiff fails to correct the deficiencies identified above, the Court will recommend that this action be dismissed pursuant to 28 U.S.C § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff is advised that an amended pleading operates as a *complete* substitute for an original pleading. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (as amended)). Thus, any amended complaint must clearly identify each intended Defendant, the constitutional claim(s) asserted against each Defendant, the specific facts which Plaintiff believes support each claim, and the specific relief requested.

The Clerk is directed to send Plaintiff the appropriate form so that he may file an amended complaint. The Clerk is further directed to send copies of this Order to Plaintiff and to the Honorable Tana Lin, United States District Judge.

DATED this 21st day of November, 2023.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 8